**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Wensink Farm Seeds, Inc., | ) Case No. 3:16-cv-1282 |
| Plaintiff, | ) Judge |
| vs. | ) |
| | ) Jury Trial Demanded |
| Howard N. Lafever, | ) |
| and | ) |
| French's Hybrids, Inc., | ) |
| Defendants. | ) |

## Complaint

For its complaint against defendants Howard N. Lafever ("Lafever") and French's Hybrids, Inc. ("French's"), plaintiff Wensink Farm Seeds, Inc. ("Wensink") states as follows:

## Summary of Case

1. Lafever and French's (collectively, the "Defendants") have engaged in an unlawful scheme, whereby they have used false advertising and a baseless sham lawsuit to create the false appearance that certain spelt[1] seeds are protected against propagation by the Plant Variety Protection Act (the "PVPA") or the Patent Act, when—in truth—no such protection exists. Their unlawful purpose is to deter Wensink (and others in the seed business) from propagating certain spelt seeds and to deter farmers and growers from purchasing seeds from Wensink.

---
[1] Spelt is a type of wheat.

{6137996:}

2. As part of their unlawful scheme, Defendants sued Wensink in the Court of Common Pleas, Erie County, Ohio, on June 8, 2015, in the case entitled *Lafever et al. v. Wensink Farm Seeds, Inc.,* Case No. 2015-cv-0352 (the "Sham Lawsuit"). A copy of the complaint filed in the Sham Lawsuit is attached as Exhibit A.

3. In that case, Defendants alleged that Wensink's sale of spelt seed called "Sabre" and a different spelt seed called "Sungold Max" violated Defendants' purported contract, common law, and statutory rights.

4. Defendants' lawsuit was a sham. Their claims had no legal or factual support, and had no hope of gaining any factual support in discovery. Defendants did not file the Sham Lawsuit to vindicate legitimate legal rights, but instead sued with the specific and improper purpose of harming their competitor Wensink and its business.

5. When Defendants could no longer continue the charade of proceeding with their frivolous case, they unilaterally dismissed the case under Ohio Civil Rule 41 "without prejudice," so that they could avoid an adverse judicial ruling (and associated sanctions), while maintaining the threat against Wensink of future litigation.

6. Wensink brings this action to remove that threat, to obtain the finality of a declaratory judgment in its favor, to confirm that Wensink's seed sales and associated activities are lawful, to have Defendants' false seed advertising removed from the marketplace, and to obtain compensation for the costs, expenses, and legal fees that Wensink incurred in defending against Defendants' malicious and frivolous lawsuit.

### The Parties

7. Wensink is an Ohio corporation with a principal place of business in Ohio.

8. Upon information and belief, French's is an Ohio corporation with a principal place of business in Ohio.

9. Lafever is an individual who, upon information and belief, resides in Indiana and does business as "Sunbeam Extract Co."

**Jurisdiction and Venue**

10. This Court has subject matter jurisdiction over Wensink's false seed advertising claim, 7 U.S.C. § 2568, and its Lanham Act claim because each claim arises under federal law.

11. This Court has supplemental subject matter jurisdiction over Wensink's state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that together the claims are part of the same case or controversy under Article III.

12. This Court has personal jurisdiction over Defendants because, by suing Wensink in Ohio state court, each has purposefully availed themselves of Ohio law and have consented to courts in Ohio, including federal courts, exercising jurisdiction over them and, in addition, French's is an Ohio corporation and Lafever has done business in Ohio, contracted with Ohio businesses, and has sufficient contacts with the state of Ohio to trigger jurisdiction under the Ohio long-arm statute and to satisfy both general and specific jurisdiction under a Due Process analysis.

13. Venue is proper in this district at least because a substantial part of the events giving rise to this cause of action occurred in this district and French's resides in this district.

## Facts

*Background*

14. Wensink is a seed farm in Monroeville, Ohio. For over 40 years, Wensink has sold different varieties of crop seeds to farmers, including corn, soy, wheat, and spelt.

15. Farmers plant Wensink's seeds to grow crops.

16. Wensink sells two types of spelt seed at issue in this case: Sabre and Sungold Max. Wensink now refers to its "Sungold Max" seed as "Ultra Max." In this complaint, Wensink will refer to its seed as "Sungold Max," regardless of what name Wensink is or was using at the time of the alleged occurrences.

17. Wensink's Sungold Max seed is derived from a bag of seeds that was provided to Wensink by a person named Ben Byler. The bag of seeds had a seed label that complied with Ohio law and contained all of the information required by Ohio Revised Code § 907. The bag did not have any label or tag that stated or implied that the seed could not be resold or planted and reproduced, as Defendants incorrectly alleged in the Sham Lawsuit.

18. Lafever owns and operates Sunbeam Extract Co., an unincorporated business.

19. French's is a seed business that, according to its website, specializes in spelt.

20. Together, Lafever and French's compete against Wensink for spelt seed sales.

21. Lafever claims to have developed a spelt variety that he calls "Sungold" and which he certified with the Ohio Seed Improvement Association (the "OSIA") under that variety name. By choosing "Sungold" as a variety name for that particular variety of spelt,

Lafever disclaimed any trademark rights that he might otherwise have in or to that term and made it a generic term for that variety of seed. The mere certification of a seed with the OSIA does not give the applicant any rights to exclude others from growing, propagating, replanting, or selling the seed.

22. The OSIA allows those who certify seeds with OSIA to provide to OSIA a written description of the seed variety that OSIA then publishes at least on its website at www.ohseed1.org and in print directories. Upon information and belief, OSIA trusts applicants to truthfully describe the seed for which they seek certification and, accordingly, republishes the entire seed description provided by the applicant on its website and in its print directories in total, as written, and without any substantive changes.

23. Lafever and French's have taken advantage of OSIA's practice by including false warning language in their "Sungold" seed description that creates the misimpression that the seed is protected by the PVPA or the Patent Act. For example, under the description of "Sungold" seed on the OSIA website, it states: "Use or sale of seed harvested of this variety for seeding purposes is strictly prohibited and can result in vigorous prosecution by the owner and exclusive license holder." A May 26, 2016, printout of the OSIA website's description of "Sungold" seed is attached as Exhibit B.

24. This is a false and misleading statement because Sungold seed is not protected by the PVPA or the Patent Act, so that propagation of Sungold seed is not "strictly prohibited" by law and—as confirmed by their dismissing their lawsuit against Wensink over its alleged propagation of Sungold seed—neither the government nor the

Defendants have any legal right to "vigorous[ly] prosecut[e]" those who propagate Sungold seed.

25. This statement actually deceives or tends to deceive a substantial portion of the intended audience into incorrectly thinking that propagation of Sungold seed is prohibited by law. Wensink's actual and potential customers are especially deceived because OSIA is the "Official Seed Certifying Agency for the state of Ohio," so that customers would believe that the "strictly prohibited" and "vigorous prosecution" warnings have been vetted, endorsed, or made by OSIA, which is not what occurred.

26. Obtaining certification with the OSIA does not give the Defendants any rights to prohibit others from propagating seed, nor does it give them any rights under the PVPA or Patent Act. Instead, it merely certifies seed variety for labeling purposes.

27. Lafever also claims to have developed a spelt variety that he calls "Sava."

28. Lafever falsely advertises to the public that only he (and his authorized licensees) have the right to sell, reproduce, and grow Sava and Sungold spelt seeds, and Lafever has falsely told the public that any violation of those purported rights "can result in vigorous prosecution."

29. Despite Lafever's false claims that use or sale of the seeds for seeding purposes is strictly prohibited, Lafever's seeds are not protected under the Patent Act, the PVPA, or any other state or federal statute or law.

*Lafever's and French's Sham Lawsuit*

30. In June 2015, Defendants filed the Sham Lawsuit against Wensink in the Court of Common Pleas, Erie County, Ohio.

31. In their complaint, Defendants alleged that Wensink—and Wensink Seed Farms, Inc.[2]—breached a contract (Count 1) and unjustly enriched themselves (Count 2) by selling a spelt called "Sabre," which Defendants falsely alleged was the same as Lafever's "Sava." This claim was factually baseless at the time it was filed because, as Lafever would later disclose in discovery, Lafever had seed testing done by South Dakota State University *prior to* filing the Sham Lawsuit that confirmed that Wensink's Sabre was *not* the same as, or derived from, Lafever's Sava. Thus, Counts 1 and 2 were objectively baseless on the day they were filed, and Lafever, French's, and their attorney knew it.

32. Defendants also alleged that Wensink has unjustly enriched itself (Count 4) and engaged in deceptive trade practices (Count 8) by using the term "Sungold Max" for spelt. These claims are legally baseless because, by selecting the word "Sungold" as a spelt variety name, Lafever has genericized that word, so that the public is free (and, in fact, encouraged) to use that word to refer to that variety of spelt without liability.

33. Defendants' other claims (Counts 3, 5, 6, 7) were legally and factually baseless, at least, for the reasons cited in Wensink's motion to dismiss those claims in the Sham Lawsuit. The state court never ruled on Wensink's partial motion to dismiss because Defendants unilaterally dismissed the entire case before a ruling occurred.

34. Defendants filed their baseless lawsuit with the improper purpose of harming Wensink and its ability to compete against Defendants by using the litigation to: (a) discourage Wensink and others from selling and reproducing seeds that they have the

---

[2] Wensink Seed Farms, Inc. is a separate and distinct legal entity from Wensink Farm Seeds, Inc., and the former has no involvement in the seed sales and reproduction at issue in the Sham Lawsuit and this complaint. Thus, it did not join as a plaintiff in this action.

{6137996:} 7

lawful right to sell and reproduce and to, thereby, give Defendants a perpetual (and unlawful) monopoly over those seeds; (b) create the false public appearance that Wensink is unethical, that its seed sales and reproduction violate the law, and that any purchase of seeds from Wensink would violate the law and potentially subject customers to future lawsuits by Defendants, thereby harming Wensink's sales, reputation, and goodwill; and (c) forcing Wensink to incur substantial legal fees and distracting Wensink from its seed business with the time and effort required by the litigation, thereby giving Defendants an undeserved competitive advantage over Wensink.

35. Furthermore, Defendants filed the lawsuit to try and create (with the threat of costly litigation against others) the illusion of patent-like protection of certain seed varieties where no such protection exists.

36. In February and March, 2016, counsel for the parties had discussions over the merits of Defendants' case. Wensink had objected to producing its sales and financial records to Defendants in discovery because Defendants had no conceivable chance of prevailing on liability for any claim. In the course of those discussions, Wensink's attorney told Defendants' attorney that the Court "needs to know what's going on here," and stated that he would expose the frivolity of Defendants' case to the Court and seek to stay or bifurcate damage discovery until after liability was decided.

37. Soon after those discussions, Defendants dismissed all of their claims "without prejudice," so they could refile the Sham Lawsuit later and keep the threat on Wensink that it may be sued again if it continues to do what the law permits, namely

selling its Sabre and Sungold Max seeds and using the "Sungold" variety name to refer to Sungold seeds.

## Count One
*False Marking under 7 U.S.C. § 2568*

38. Wensink incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

39. Among other things, 7 U.S.C. § 2568 prohibits persons from using either the phrase "Unauthorized Propagation Prohibited" or "Unauthorized Seed Multiplication Prohibited" or similar phrase without reasonable basis in connection with the sale, offering for sale, or advertising of sexually reproducible plant material.

40. Defendants have advertised, at least through the OSIA website, that the unauthorized propagation of Sungold spelt is prohibited and, in so doing, have created the false impression that Sungold spelt has PVPA protection, when there is no such prohibition or protection.

41. Accordingly, Defendants have violated the false marking provision of the PVPA, which entitles Wensink to damages, fines against Defendants, and injunctive relief.

## Count Two
*False Advertising under the Lanham Act*

42. Wensink incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

43. As described above, Defendants have made false and misleading statements, which include statements that the propagation of Sungold spelt seed is prohibited by law that may subject one to vigorous prosecution, which is untrue.

44. Defendants' false statements tend to deceive—and, upon information and belief, actually deceive—a substantial portion of the intended audience into incorrectly thinking that propagation of Sungold seed is illegal and that Wensink's Sungold Max seeds were illegally grown, which they were not.

45. Customers who incorrectly believe that propagation of Sungold seed is illegal are likely to incorrectly believe that Wensink's Sungold Max seeds were illegally grown and, therefore, are less likely to purchase Wensink's Sungold Max seed.

46. Defendants have made the false statements in interstate commerce at least by causing those statements to be published on the internet through OSIA's website.

47. Defendants' false and misleading statements are false advertising under § 43(a) of the Lanham Act.

48. Defendants' false advertising has damaged Wensink in an amount to be determined at trial and caused it irreparable harm, which will continue unless Defendants' false statements are retracted and enjoined by this Court.

**Count Three**
*False Advertising under the Lanham Act*

49. Wensink incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

50. Defendants' unlawful activities, as described above, violate Ohio's Deceptive Trade Practices Act.

51. Defendants' violations of Ohio's Deceptive Trade Practices Act have damaged Wensink and caused it irreparable harm, which will continue unless Defendants' unlawful conduct is enjoined by this Court.

**Count Four**
*Unfair Competition -- Malicious Litigation*

52. Wensink incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

53. In the Sham Lawsuit, Defendants alleged that Wensink's sale and reproduction of its Sabre and Sungold Max spelt seeds, and Wensink's use of the variety name "Sungold" to sell Sungold seed, constituted a breach of contract (Counts 1 and 3), unjust enrichment (Counts 2 and 4), tortious interference with business relations and contract (Counts 5 and 6), trade secret misappropriation (Count 7), and deceptive trade practices (Count 8).

54. Each of those claims is objectively baseless because, among other things, Wensink's Sabre seed is not the same as Lafever's Sava seed, there is and was no contract between Wensink and Defendants regarding the Sungold seed that Byler provided to Wensink (which was reproduced to become Sungold Max), Wensink did nothing improper in reproducing and selling its Sabre and Sungold Max seeds (which is fatal, at least, to Defendants' trade secret and tortious interference claims), Lafever's Sungold seed is not a trade secret, and by selecting "Sungold" as a seed variety name, Lafever genericized that word and disclaimed any trademark rights he might otherwise have had in that word.

55. Defendants filed the Sham Lawsuit with the subjective intent to injure Wensink and its ability to be competitive, with malice and bad faith.

56. Defendants' malicious litigation against Wensink is an actionable form of unfair competition that has damaged Wensink in an amount to be determined at trial.

## Count Five
*Declaratory Relief*

57. Wensink incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

58. In the Sham Lawsuit, Defendants alleged that Wensink's sale and reproduction of the Sabre and Sungold Max seed violates Defendants' purported contract, equitable, common law, and statutory rights.

59. Defendants are wrong. Wensink's activities do not violate any of Defendants' rights, if any, and Wensink has the lawful right to sell and reproduce its Sabre and Sungold Max seeds and to use the "Sungold" variety name to refer to a Sungold variety of spelt seed. Wensink, therefore, seeks a judicial declaration of its legal rights so that it may conduct business without interference from Defendants and without the looming threat of future litigation.

60. Although Defendants dismissed the Sham Lawsuit against Wensink, they did so "without prejudice." Because they can refile their claims, a substantial and live controversy exists between the parties, which have adverse legal interests, regarding the legality of Wensink's sale and reproduction of Sabre and Sungold Max seeds.

61. In accordance with Ohio's Declaratory Judgment Act, Ohio Rev. Code § 2721, the Court should enter a judgment declaring that: (a) Defendants' Sham Lawsuit

was objectively baseless and brought with bad faith and malicious intent to harm a competitor and gain a competitive advantage; (b) Wensink has the legal right to sell and reproduce its Sabre and Sungold Max seed and that such activities by Wensink (whether in the past or future) do not violate Defendants' legal rights, if any; and (c) Wensink has the legal right to use the "Sungold" variety name alone or in a multi-word name, such as "Sungold Max," in commerce to identify Sungold seed to customers.

## **Prayer for Relief**

**WHEREFORE**, Wensink prays for judgment against Defendants as follows:

(A)  Compensatory damages in an amount to be determined at trial.

(B)  An accounting and disgorgement of Defendants' ill-gotten profits.

(C)  Fees and statutory damages.

(D)  Punitive damages.

(E)  Attorneys' fees.

(F)  Entry of a declaratory judgment as described in paragraph 41 of this complaint.

(G)  Pre-judgment and post-judgment interest.

(H)  Costs of the action.

(I)  Such other and further relief as allowed at law or in equity that the Court deems to be appropriate and to which Wensink is entitled.

Dated: May 26, 2016

   s/ Matthew J. Cavanagh
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Counsel for*
*Wensink Farm Seeds, Inc.*

## Jury Demand

Plaintiff Wensink Farm Seeds, Inc. hereby demands a jury trial for all issues so triable.

                                                  s/ Matthew J. Cavanagh
                                                  *Counsel for*
                                                  *Wensink Farm Seeds, Inc.*