UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Wensink Farm Seeds, Inc.,                                    Case No. 16-cv-1282

          Plaintiff

    v.                                                               MEMORANDUM OPINION


Howard N. Lafever, et al.,

          Defendants


## I.      INTRODUCTION

Defendants Howard N. Lafever and French's Hybrids, Inc. move for summary judgment

based upon an alleged breach of a settlement agreement. (Doc. No. 6). Plaintiff Wensink Farm

Seeds, Inc. opposed the motion (Doc. No. 12), to which Defendants replied. (Doc. No. 19).

Plaintiff also moved to strike the testimony given in an affidavit by Connor Kinsey (Doc. No. 19-1)

and portions of Defendants' reply brief (Doc. No. 19). (Doc. No. 20). Defendants opposed

Plaintiff's motion to strike (Doc. No. 21), and Plaintiff replied, in turn. (Doc. No. 22).

## II.      BACKGROUND

On June 8, 2015, Defendants Howard Lafever and French's Hybrids, Inc. filed suit in the

Erie County Court of Common Pleas against Plaintiff Wensink Farm Seeds, Inc. (Doc. No. 1-1).

Defendants alleged that a seed sold by Wensink was the same as, or derived from, seeds sold by

Defendants. *Id.* But, prior to the filing of such claims, Wensink's seeds were tested by South

Dakota State University and this allegation was found to be false. (Doc. No. 12-3 at 3). After the

email regarding seed testing was discovered, Wensink's legal counsel asked Lafever's counsel if it

would oppose Wensink's motion to amend the answer and file a counterclaim for unfair

competition by malicious litigation against Lafever. (Doc. No. 12-5). Wensink's counsel advised

that even if Lafever opposed the amendment or the court denied the motion, it would be filing the claim in an independent action. *Id.* Less than one week after the email regarding the malicious litigation claim was sent, Lafever dismissed the case in its entirety "without prejudice." (Doc. No. 6-1 at 2).

To avoid the possibility of future litigation on the subject, Wensink, through counsel, proposed a settlement to Lafever. (Doc. No. 12-9). Counsel for the parties discussed the terms of settlement over the course of a few months before compromising to terms that appeared acceptable to both. (Doc. No. 6-2 at 1-8). Wensink's counsel drafted the agreement now in question and sent it to Defendants' counsel. *Id.* at 8-18. Two weeks after Defendants had signed the agreement, with one correction to which Wensink's counsel had acquiesced, Wensink refused to sign the agreement. *Id.* at 19-34. Wensink then filed suit with this court, asserting claims that had been expressly released by the Agreement. (Doc. No. 1). Defendants filed a counterclaim based on breach of the agreement and moved for summary judgment on the claim. (Doc. Nos. 5, 6)

### III.    MOTION TO STRIKE

As noted by both parties, "[a] reply brief is for replying." *Hussein v. Oshkosh Motor Truck Co.,* 816 F.2d 348, 360 (7th Cir. 1987). While a party may not *raise* an issue for the first time in a reply brief, it may "*reply* to arguments made in the response brief." *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.,* 284 F.3d 1261, 1274 (Fed. Cir. 2002)). Further, "reply affidavits that respond only to the opposing party's brief are properly filed with the reply brief." *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 476 (6th Cir. 2002).

In the motion in opposition, Wensink challenged whether the elements of contract formation had been met, whether its attorney had authority to settle, and the scope of the agreement. (Doc. No. 12 at 9-13, 15-16). Defendants did not *raise* these issues for the first time in the reply, they merely replied to Wensink's legal arguments on the subjects. Since the arguments asserted in the reply were within the scope of those raised in the opposition, Section III containing

those legal arguments and Connor Kinsey's affidavit attached in support of them will not be stricken.

Additionally, while new evidence submissions in a reply brief require the district court to grant the nonmoving party an opportunity to reply, "new arguments based on existing and undisputed evidence" do not. *Mirando v. U.S. Dept. of Treasury*, 766 F.3d 540, 549 (6th Cir. 2014). Here, Wensink contends that Section II and Kinsey's affidavit present new evidence, but I do not agree. Kinsey's affidavit is nearly identical to that of Howard Lafever, which was attached as an exhibit to Defendants' initial motion for summary judgment. (Doc. Nos. 6-1, 19-1). Both affidavits merely reiterate the email communication between Kinsey and Wensink's counsel, Matthew Cavanagh. Section II of Defendants' reply brief, citing Kinsey's affidavit, is also a mere recitation of the email communications previously submitted to the court and provides no new material evidence for consideration. Since Wensink itself also submitted a copy of the email communications as exhibits, the existence and content of the emails are undisputed. Section II and Kinsey's affidavit are not new evidence and will not be stricken. Because the reply brief was based upon the undisputed email communication, the court is not required to grant Wensink, as the nonmoving party, an opportunity to respond to any new legal argument or strike any legal argument based on those undisputed facts.

For the foregoing reason, Wensink's motion to strike is denied. Even so, I find Wensink's argument of equitable concerns to be without merit. When initially filing the motion to strike, Wensink argued that it should be granted "[b]ecause Wensink has no opportunity to respond to evidence and arguments for the first time on reply." (Doc. No. 20). As noted above, it is true that "the purposes of notice and opportunity to respond extend Rule 56(c) to the situation where the moving party submits in a reply brief new reasons and evidence in support of its motion for summary judgment." *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003). But in this case, Wensink was given the opportunity when Defendants expressly consented to Wensink filing a sur-

reply prior to opposing the motion to strike. (Doc. No. 21-1). When given the opportunity to meaningfully respond to the reply brief, regardless of whether it was legally entitled to do so, Wensink declined. (Doc. No. 21-2). Therefore, I find no grounds to conclude that Wensink was not given a fair opportunity to be heard on the legal arguments asserted in Defendants' reply.

IV. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

Defendants move for summary judgment on their counterclaim of breach of the settlement agreement. (Doc. No. 6). Wensink asserts that the settlement agreement in question was never valid and, even if it was, it does not apply to Counts One through Three of the complaint. (Doc. No. 12).

1.     Contract Formation

As a type of contract, settlement agreements are governed by state contract law. *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). The parties agree that Ohio law applies. In Ohio, a settlement agreement is valid if there is "a meeting of the minds as well as an offer and an

acceptance thereof." *Rulli v. Fan Co.*, 79 Ohio St. 3d 374, 376 (1997). Because of the policy strongly "favoring the settlement of disputes and the avoidance of costly and time-consuming litigation," the trial court has the power to enforce settlement agreements "even where the agreement has not been arrived at in the presence of the court nor reduced to writing." *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973). But, "courts will give effect to the manifest intent of the parties where there is clear evidence demonstrating that the parties did not intend to be bound by the terms of an agreement until formalized in a written document and signed by both." *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St. 2d 147, 151 (1978).

The crux of the analysis here is whether the draft agreement emailed by Wensink's attorney, Matthew Cavanagh, was an offer which Defendants could accept. As noted by Wensink,

> "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24. "A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." Restatement (Second) of Contracts § 26.

(Doc. No. 12 at 9). Here, Wensink, through its attorney, initially requested "a signed settlement agreement" and outlined the terms that would be acceptable including release of claims, covenant not to sue, and $51,000 in attorney's fees. Wensink's Vice-President, Thomas Wensink, confirmed this, stating, "After Lafever's dismissal, we authorized our attorney to discuss the possibility of settlement with Lafever's attorney" and that Wensink had discussed "settlement with Lafever through our respective attorneys." (Doc. No. 12-1 at 5). Wensink's conduct evinces an intent to enter into a settlement agreement with Lafever, even if it later decided to only settle with French's.

After the initial request for settlement, Wensink's attorney, Cavanagh, and Defendants' attorney, Connor Kinsey, exchanged numerous emails discussing terms of settlement that would be acceptable to each of their clients. The majority of the debate centered on the $51,000 Wensink requested for attorney fees. Wensink finally conceded the issue and Cavanagh emailed Kinsey, "the

Wensinks would agree to settlement in which they release their potential claims against Lafever (including their claims for attorneys' fees), if we are able to reach agreement on the other terms." In the same email, Cavanagh attached the agreement in question, which he had drafted, "for your and your clients' review." Kinsey informed Cavanagh of one non-substantive edit to the agreement and said, "I will take to my clients for review and hopefully signature." Cavanagh responded, "Your correction is correct. Thanks, Matt." When the Defendants' had signed the agreement, Kinsey notified Cavanagh and asked whether Wensink had signed the agreement. In response, Cavanagh thanked Kinsey and said, "I will notify the Wensink's that your clients have signed and ask that they sign their counterpart."

Since Wensink's attorney drafted the agreement and acceded on the only remaining minor point of contention, it was reasonable for the Defendants to have assumed both parties were willing to accept the language of the agreement. Additionally, when Kinsey proposed the correction and informed Cavanagh of his intent to have Defendants sign the agreement as a final document, Cavanagh merely thanked Kinsey and acquiesced to the correction. Cavanagh did not protest that the agreement was simply a draft or inform Kinsey that the agreement might change because Wensink had not yet approved the language. Cavanagh's statements throughout the negotiations justify Defendants belief that the agreement, with the acquiesced correction, was an offer which could be accepted through signature to provide Wensink with the "signed settlement" it had requested.

Wensink contends that the draft was not intended as an offer because Wensink retained the right to final review and approval. Generally in Ohio, the client must give an attorney *actual* authority to settle. *See Morr v. Crouch*, 19 Ohio St. 2d 24 (1969). In other words, "[i]f an attorney settles a client's claims without his client's authorization to discuss settlement with opposing counsel, the settlement is unenforceable." *Rubel v. Lowe's Home Ctrs., Inc.*, 597 F. Supp. 2d 742, 746 (N.D. Ohio 2009). But "authorization for an attorney to settle a client's claim need not be express, but

may be ascertained from the surrounding circumstances." *Elliot v. Gen. Motors Corp.*, 72 Ohio App.3d 486,488 (1991); *see also Rubel*, 597 F. Supp. 2d at 745. Therefore, "if a client authoriz[es] his attorney to negotiate a settlement, but then the attorney 'settles the client's claims on terms unacceptable to the client, such a settlement is enforceable despite the client's lack of consent.'" *Rubel*, 597 F. Supp. 2d at 746 (quoting *Patel v. Lowes Home Centers, Inc.*, 2007 WL 544049 (S.D. Ohio Feb. 16, 2007)); *see also Argo Plastic Prods. Co. v. City of Cleveland*, 15 Ohio St. 3d 389, 392 (1984) (holding that the party was bound to a settlement of $500,000 agreed to by the attorney even though they had only authorized the attorney to settle for $2,500).

The facts at issue here are similar to those in *Patel*, in which the client, Ms. Patel, authorized her attorney to engage in settlement negotiations, but claimed she retained the ultimate right to accept or reject the settlement. The attorney made an offer to opposing counsel without informing them that the offer was contingent on Ms. Patel's approval or implying in any way that he did not have authority to make the offer. The opposing party accepted the terms of the settlement. After acceptance, Ms. Patel refused to sign the settlement agreement and asserted that the agreement was invalid, arguing that her attorney did not have authority to settle without her ultimate approval. The court held that because Ms. Patel had authorized her attorney to engage in settlement negotiations, the attorney had apparent authority to bind her in settlement upon which the opposing party could rely. In reasoning, the court cited *Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, 531 (6th Cir. 1986), "But for this rule of law, prudent litigants could not rely on opposing counsel's representation of authorization to settle. Fear of a later claim that counsel lacked authority to settle would require litigants to go behind counsel to the opposing party in order to verify authorization for every settlement offer." *Patel*, 2007 WL 544049 at *5.

Here, Wensink "authorized [Cavanagh] to discuss the possibility of settlement with Lafever's attorney" and "discuss[ed] settlement with Lafever through our respective attorneys." (Doc. No. 12-1 at 5). Although Wensink claims it had final approval rights, Cavanagh never informed Kinsey

of the bounds of his authority. As described above, Cavanagh engaged in settlement negotiations with Kinsey in which he frequently referenced Wensink's position on the terms of the settlement. Also, since Cavanagh drafted the agreement in question and did not merely agree to terms proposed by Kinsey, Kinsey could reasonably rely on the assumption that Wensink had approved the terms of the draft and authorized its delivery to Defendants for acceptance. Because of Cavanagh's position as Wensink's attorney, Kinsey and Defendants' assumption that he had authority to make a settlement offer is justified. By giving Cavanagh authority to negotiate settlement, Wensink authorized the apparent authority on which Defendants could rely.

Wensink also asserts that without its signature the agreement never became enforceable because under the language of the agreement, "The 'Effective Date' of this Agreement is the date on which the last Party has signed." Ms. Patel made a similar argument. The court found Ms. Patel's signature to be a "condition precedent." Since the condition could not be performed because of Ms. Patel's conduct, the court held the contract enforceable, stating, "It is simply inequitable to permit a party to render the performance of a portion of an agreement impossible and then to argue, based upon that impossibility, that the remainder of the agreement should not be enforced." *Patel*, at *7; *see also Suter v. Farmers' Fertilizer Co.*, 100 Ohio St. 402, 411 (1919) ("[W]here the liability depends upon a condition precedent, one cannot avoid his liability by making the performance of the condition precedent impossible, or by preventing it."). Similarly, Wensink cannot now contend that its signature as a condition precedent to the "effective date" can make the entire agreement unenforceable.

The agreement was a *release* of claims. The released claims were extinguished when the agreement was accepted. The statute of limitations on any of those released claims was also extinguished at the moment the agreement was accepted. Since no part of the agreement releasing the claims would cause the contract's performance to continue for more than one year, the statute of

frauds does not apply. Wensink's signature is not necessary to make the agreement valid and enforceable.

The draft agreement sent by Cavanagh was an offer which was accepted by Defendants to form an enforceable settlement agreement. By authorizing Cavanagh to negotiate a settlement, Wensink provided the authorization necessary to be bound in settlement. With the authority to negotiate, Cavanagh spoke on behalf of Wensink, drafted and sent the agreement in question, acquiesced to a change to the agreement, and accepted Defendants signature on the draft without protest. I find boilerplate language regarding "effective date" to be a condition precedent, upon which Wensink cannot rely to make the entire agreement unenforceable, and the statute of frauds to be inapplicable to the agreement. Wensink requested, negotiated, and drafted the settlement agreement with both Defendants, French's *and* Lafever. Any change of heart is not grounds to invalidate the settlement agreement.

2.      Scope of the Settlement Agreement

According to the language of the agreement, Wensink agreed to:

> release Lafever and French's…from: (a) any and all claims or defenses that [Wensink] asserted in the Action, or could have asserted, and that arise out of the same transactions or occurrences at issue in the Action; and (b) any claim for attorneys' fees or damages based on the Plaintiffs' filing and maintaining the Action, including any claims for unfair competition, malicious litigation, abuse of process, or the like.

(Doc. No. 6-2 at 22). Wensink does not argue the agreement's applicability to Counts Four and Five of its complaint, but contends the agreement does not bar Counts One through Three. The issue is whether Counts One, Two, and Three could have been asserted in the previous state action.

Under the Ohio Rules of Civil Procedure, a counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Ohio R. Civ. P. 13(a). "The two-pronged test for applying Civ.R. 13(A) is: (1) does the claim exist at the time of serving the pleading (in this case at the time plaintiff served its answer

9

to the 1978 warranty actions); and (2) does the claim arise out of the transaction or occurrence that is the subject matter of the opposing claim." *Geauga Truck &Implement Co. v. Juskiewicz*, 9 Ohio St. 3d 12, 14 (1984). Permissive counterclaims include "any claim[s] against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Ohio R. Civ. P. 13(b).

Counts One through Three are based upon the following statement published on the Ohio Seed Improvement Association (OSIA) webpage: "Use or sale of seed harvested of this variety for seeding purposes is strictly prohibited and can result in vigorous prosecution by the owner and exclusive license holder." Under Federal Rule of Evidence 201(b), the court can take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." As our sister court held in *Pond Guy, Inc. v. Aquascape Designs, Inc.*, 2014 WL 2863871 (E.D. Mich. June 24, 2014), "the Internet Archive [,found at https:// archive.org/web/,] has been found to be an acceptable source for the taking of judicial notice." *Id.* at *4 (citing precedent in other district courts and the Federal Circuit). Accordingly, I will take judicial notice of the Internet Archive which shows the statement in question was published on the OSIA webpage sometime between February 2, 2016 and April 3, 2016.[1] Since this statement could have been published after Defendants voluntarily dismissed the Action on March 7, 2016, it may have been impossible for Wensink to assert a counterclaim based on the statement during the Action. Therefore, as there is a factual dispute as to whether Counts One through Three based on the statement could have been asserted in the Action, these claims remain.

V.     CONCLUSION

For the foregoing reasons, Wensink's motion to strike is denied and I find the agreement valid and enforceable. Since Counts Four and Five of Wensink's complaint were released by the

---

[1] *See* https://web.archive.org/web/20160202005603/http://ohseed1.org/certified-spelt-varieties/; and https://web.archive.org/web/20160403192843/http://ohseed1.org/certified-spelt-varieties/.

agreement, by filing those claims Wensink breached the agreement and summary judgment is granted to Defendants on the counterclaim. But Wensink's complaint will not be dismissed in its entirety since there remains a dispute as to whether Counts One through Three could have been asserted in the prior state lawsuit.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge